**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mireya Villamar,<br><br>        Plaintiff,<br><br>v.<br><br>Skywest Airlines Incorporated, et al.,<br><br>        Defendants. | No. CV-18-01185-PHX-RM<br><br>**ORDER** |

Pending before the Court are Defendants' Motion to Dismiss (Doc. 9), Plaintiff's Motion to Remand for Lack of Subject Matter Jurisdiction (Doc. 10), and Plaintiff's Motion for Leave to File Amended Complaint (Doc. 16).

**I.    Motion to Remand**

    **A.    Standard of Review**

A federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1). A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).

Where a complaint does not specify the amount of damages sought, the defendant bears "the burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds $75,000" in order to support removal based on diversity jurisdiction. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839 (9th Cir. 2002) (per curiam); *see also* 28

U.S.C. § 1446(c)(2); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). A defendant must offer more than "conclusory allegations" in order to meet this burden of proof. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). The amount in controversy for purposes of diversity jurisdiction "is determined from the pleadings as they exist at the time a petition for removal is filed." *Eagle v. Am. Tel. & Tel. Co.*, 769 F.2d 541, 545 (9th Cir. 1985).

There is a "strong presumption" against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

**B.    Discussion**[1]

Plaintiff argues the Court lacks subject matter jurisdiction because the amount in controversy is not satisfied. She alleges she did not allege damages with precision in the Complaint, but rather generally pled the maximum amount of damages awardable (113,100 Special Drawing Rights) under the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45 ("Montreal Convention"). She now contends that her damages are less than $75,000 and asserts that Defendants cannot prove otherwise. Defendants disagree that Plaintiff's prayer for maximum damages is irrelevant to the analysis. They point out that Plaintiff also prayed for a minimum of $10,000 in attorneys' fees, and they urge the Court to consider Plaintiff's initial settlement demand for "113,100 Special Drawing Rights ("SDRs") which is equivalent to $160,783.13."

The amount-in-controversy requirement was satisfied at the time of removal, and thus Plaintiff's Motion to Remand will be denied. It is apparent from the face of the Complaint that the amount in controversy exceeds $75,000. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("In determining the amount in controversy,

---

[1] Plaintiff does not dispute complete diversity, and the record shows the parties are diverse.

courts first look to the complaint."). Plaintiff prayed for a minimum of $10,000 in fees and for "[a]n award of damages in the amount of 113,100 SDRs," which was equivalent to $164,840.99 on the date of removal, April 17, 2018. (Doc. 1-3 at 5.)[2] These strict-liability damages were apparently sought in good faith; thus, Plaintiff's prayer is sufficient to find the jurisdictional threshold satisfied. *Ibarra*, 775 F.3d at 1197 ("Generally, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938))). Further evidencing this conclusion is Plaintiff's settlement letter, which states: "Your insured is strictly liable to pay Ms. Villamar damages in the maximum non-contestable amount of 113,100 SDRs." (Doc. 19 at 13); *Cohn*, 281 F.3d at 840 ("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." (citations omitted)).

Plaintiff's insistence that her damages are less than $75,000 does not defeat jurisdiction. The amount in controversy was satisfied at the time of removal, and "[e]vents occurring after the filing of the complaint that reduce the amount recoverable below the requisite amount do not oust the court from jurisdiction." *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997) (citation omitted); *see Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1064 (11th Cir. 2010) ("Thus, when a district court can determine, relying on its judicial experience and common sense, that a claim satisfies the amount-in-controversy requirements, it need not give credence to a plaintiff's representation that the value of the claim is indeterminate.").

## II. Motion to Dismiss

### A. Standard of Review

A complaint must include a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require in-depth factual allegations, it does require more than "labels[,] conclusions, [or] a

---

[2] International Monetary Fund, *Currency Units per SDR for April 2018*, https://www.imf.org/external/np/fin/data/rms_mth.aspx?SelectDate=2018-04-30&reportType=CVSDR (last visited Oct. 24, 2018).

formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There must be sufficient "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Dismissal under Rule 12(b)(6) may be "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court takes "all factual allegations set forth in the complaint . . . as true and construed in the light most favorable to plaintiffs." *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001). However, only well-pleaded facts are given a presumption of truth. *Iqbal*, 556 U.S. at 679. Conclusory allegations—that is, allegations that "simply recite the elements of a cause of action" without supplying underlying facts to support those elements—are not "entitled to the presumption of truth." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

The Court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice— without converting [a] motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "[I]t is proper for the district court to 'take judicial notice of matters of public record outside the pleadings' and consider them for purposes of the motion to dismiss." *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Further, the Court is not required to "accept as true allegations that contradict matters properly subject to judicial notice . . . ." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

If a complaint falls short of meeting the necessary pleading standards, a district court should dismiss with leave to amend unless the deficiencies of a pleading "could not possibly be cured by the allegation of other facts." *Lacey v. Maricopa County*, 693 F.3d 896, 926 (9th Cir. 2012) ("We have adopted a generous standard for granting leave to amend from a dismissal for failure to state a claim . . . ."). Failing to give leave to amend

when a plaintiff could include additional facts to cure a complaint's deficiencies is an abuse of discretion. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637–38 (9th Cir. 2012).

### B. Complaint

Plaintiff's claim for damages under the Montreal Convention is based upon the following allegations: on January 8, 2016, Plaintiff was traveling from Phoenix to visit family in Ecuador. (Doc. 1-3, Ex. A, ¶ 6.) Plaintiff was a passenger on Skywest – United Flight UA6451 from Phoenix to Los Angeles International Airport ("LAX"), with a connection to Panama and then Ecuador. (*Id.*) Upon arrival to LAX, Plaintiff attempted to deplane in order to make her connecting flight. (*Id.* ¶ 7.) Plaintiff gave her carry-on baggage to the flight attendant and proceeded to exit the plane. (*Id.*) As she was exiting the plane, she tripped on some luggage that had been placed in the aisle by one of Defendants' employees. (*Id.*) Plaintiff advised the flight attendant of her injury and was instructed to notify employees at the next stop, in Panama. (*Id.*)

Plaintiff sustained injuries, including a contusion to her left clavicle, deep vein thrombosis in her leg, and strain to her hip, lower back, and leg. (*Id.*) Plaintiff's injuries required medical attention while she was in Ecuador and upon returning home to Arizona. (*Id.* ¶ 8.) Plaintiff suffered pecuniary losses, including medical special damages, lost wages, as well as damages for pain and suffering. (*Id.* ¶ 11.)

### C. Discussion

Defendants argue Plaintiff has failed to adequately allege that she suffered an "accident" within the meaning of Article 17 of the Montreal Convention, and since case law establishes that the presence of luggage in the aisle during deplaning is not "unexpected or unusual," amendment would be futile. Plaintiff contends that she has adequately alleged a claim under the Montreal Convention and that Defendants are holding her to a burden higher than what is required at the pleading stage. The Court agrees with Plaintiff, and Defendants' Motion to Dismiss will be denied.

Under Article 17 of the Montreal Convention, "[t]he carrier is liable for damage

sustained in case of . . . bodily injury of a passenger upon condition only that the accident which caused the . . . injury took place . . . in the course of any of the operations of embarking or disembarking." An "accident" under the Montreal Convention is "an unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405 (1985).[3] "But when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17 of the [Montreal] Convention cannot apply." *Id.* at 406.

Plaintiff alleges that she suffered an "accident" when she tripped on luggage placed in the aisle by Defendants' employee, and she avers that this occurrence was "an unexpected or unusual event or happening that is external to the passenger." She alleges that the "accident" caused her physical and mental injuries. Although a bit bare, these allegations, taken as true and construed favorably to Plaintiff, meet the elements of an Article 17 claim. *See Phifer v. Icelandair*, 652 F.3d 1222, 1224 (9th Cir. 2011) (explaining that an Article 17 claim requires proof of (1) an unexpected or unusual injury-causing event that (2) was external to plaintiff and (3) caused plaintiff's injuries).

Defendants' arguments demand too much from Plaintiff at this stage of the litigation. They assert that "Plaintiff has failed to establish an 'accident' occurred," and that "[t]he allegations contained within the Complaint fail to state a claim upon which relief may be granted because there is no evidence luggage present in the aisle during deplaning is [an] 'unexpected or unusual event[.]'" All Plaintiff need do at this point is plausibly allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. She has done so.

Defendants' authority regarding what is not an "accident" does not persuade the

---

[3] *Saks* involved interpretation of the Warsaw Convention of 1929. The Montreal Convention is the successor to the Warsaw Convention. Because the Montreal Convention's liability provision is substantively the same as the Warsaw Convention's, federal courts hearing a claim under the former may rely on cases involving the latter. *Narayanan v. British Airways*, 747 F.3d 1125, 1127 n.2 (9th Cir. 2014) (citations omitted).

Court otherwise. Tellingly, all of the cases cited reached that conclusion in the context of a summary judgment motion. *See Rafailov v. El Al Isr. Airlines, Ltd.*, No. 06 CV 13318(GBD), 2008 WL 2047610, at *3 (S.D.N.Y. May 13, 2008) (finding no "accident" and granting summary judgment); *Ugaz v. Am. Airlines, Inc.*, 576 F. Supp. 2d 1354, 1375 (S.D. Fla. 2008) (same); *Sethy v. Malev-Hungarian Airlines, Inc.*, No. 98 Civ. 8722(AGS), 2000 WL 1234660, at *5 (S.D.N.Y. Aug. 31, 2000) (same). This comes as no surprise, as the "[accident] definition should be flexibly applied *after assessment of all the circumstances surrounding a passenger's injuries*." *Saks*, 470 U.S. at 405 (emphasis added).

Admittedly, there is a logical appeal to Defendants' contention that there is nothing unexpected or unusual about luggage in the aisle of an airplane during deplaning. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation and internal quotation marks omitted). Defendants' Motion to Dismiss will be denied.

### III. Motion to Amend

#### A. Standard of Review

Except for amendments made as a matter of course or with the opposing party's written consent, leave of Court is required to amend a pleading. Fed. R. Civ. P. 15(a). The district court has discretion in determining whether to grant or deny leave to amend, *Foman v. Davis*, 371 U.S. 178, 182 (1962), but leave should freely be given "when justice so requires," Fed. R. Civ. P. 15(a)(2). There is a "strong policy to permit the amending of pleadings." *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973). In determining whether to grant leave to amend, the Court considers whether there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam)

(quoting *Foman*, 371 U.S. at 182).

**B.  Discussion**

Plaintiff requests leave to bring a state-law claim for negligence/premises liability. Defendants argue that any state-law claim would be futile because the Montreal Convention completely preempts such claims. The Court agrees with Defendants and finds that Plaintiff's proposed amendment is futile.

The Supreme Court considered the preemptive effect of the Warsaw Convention (the predecessor to the Montreal Convention) in *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155 (1999). For several reasons, the Supreme Court held that "recovery for a personal injury suffered 'on board [an] aircraft or in the course of any of the operations of embarking or disembarking,' if not allowed under the Convention, is not available at all." *Id.* at 161 (internal citation omitted). First, "[g]iven the Convention's comprehensive scheme of liability rules and its textual emphasis on uniformity," it would be illogical "to conclude that the delegates at Warsaw meant to subject air carriers to the distinct, nonuniform liability rules of the individual signatory nations." *Id.* at 169. Second, given the narrowing of liability in Article 17 to encompass only bodily injury caused by an "accident," it is improbable that the drafters intended "to permit passengers to skirt those conditions by pursuing claims under local law." *Id.* at 173. Third, the Supreme Court found that Article 24—which provides, "In the carriage of passengers and baggage, any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention . . . ."—clearly indicated the Warsaw Convention's preemptive effect. *Id.* at 174–75. Finally, the Supreme Court observed that courts of other signatory nations had already recognized the Warsaw Convention's preemptive effect. *Id.* at 175–76.

Although neither the Supreme Court nor the Ninth Circuit Court of Appeals has ruled on the preemptive effect of the Montreal Convention, the Court is persuaded by the reasoning set forth in *Tseng* that the Montreal Convention preempts state-law claims. First, like the Warsaw Convention, a primary purpose of the Montreal Convention is to

achieve uniformity of rules governing the liability of international aircraft carriers. *See* Preamble to Montreal Convention (acknowledging "the significant contribution of the [Warsaw] Convention . . . to the harmonization of private international air law" and recognizing "the need to modernize and consolidate the Warsaw Convention"). Second, like the Warsaw Convention, the Montreal Convention sets forth a specific, comprehensive set of rules governing passengers' personal-injury claims, such that it would be anomalous to allow passengers to plead around them. *See* Montreal Convention arts. 17, 21. Third, the Montreal Convention contains an exclusivity provision that is substantially similar to the Warsaw Convention's: "In the carriage of passengers . . . any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention . . . ." Montreal Convention art. 29. Finally, the British courts have recognized the Montreal Convention's preemptive effect. *See Fadhliah v. Societe Air France*, 987 F. Supp. 2d 1057, 1064 (C.D. Cal. 2013) (discussing the British case of *Hook v. British Airways PLC*).

The foregoing compels the conclusion that the Montreal Convention preempts all state-law claims that fall within its scope but do not satisfy its conditions for liability. *See Tseng*, 525 U.S. at 176. Other district courts have reached the same conclusion based on the same reasoning. *See Fadhliah*, 987 F. Supp. 2d at 1063–64; *Ugaz*, 576 F. Supp. 2d at 1360; *Schaefer-Condulmari v. U.S. Airways Grp.*, No. 09–1146, 2009 WL 4729882, at *8–10 (E.D. Pa. Dec. 8, 2009). The foregoing cases convince the Court that its conclusion is the correct one.

Plaintiff relies on *Greig v. U.S. Airways Inc.*, 28 F. Supp. 3d 973, 977 (D. Ariz. 2014), in which the district court found that the Montreal Convention does not completely preempt state-law claims. *Greig* is not persuasive. In finding that contract and tort claims are permitted under the Montreal Convention, the *Greig* court distinguished *Tseng* by observing that "[t]he Supreme Court did not address whether state law claims might be brought when [the Warsaw Convention's] conditions for liability

were met." *Id.* This reasoning ignores perhaps the most important factor in the *Tseng* court's analysis: that the Warsaw Convention was intended to "achiev[e] uniformity of rules governing claims arising from international air transportation." *Tseng*, 525 U.S. at 169 (quoting *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 552 (1991)). Uniformity would not be promoted by allowing individual states to apply common law claims to injuries that fall within the Montreal Convention's scope.

Next, the *Greig* court relied on the "plain language" of Article 29 to find that the Montreal Convention permits state-law claims based on contract or tort. 28 F. Supp. 3d at 977. However, given the significant disagreement regarding the Montreal Convention's preclusive effect (as recognized by the *Greig* court), the drafting history of Article 29 should be consulted. Regarding Article 29, the Montreal Convention's Chairman explained:

> The purpose behind Article 2[9] was to ensure that, in circumstances in which the Convention applied, it was not possible to circumvent its provisions by bringing an action for damages in the carriage of passengers, baggage and cargo in contract or in tort or otherwise. Once the Convention applied, its conditions and limits of liability were applicable.

*Fadhliah*, 987 F. Supp. 2d at 1063 (citing Int'l Civil Aviation Org., *International Conference on Air Law*, Minutes Vol. 1, Doc. 9775-DC/2, at 235 (1999)). Thus, "the additional 'in contract or in tort or otherwise' language simply bolsters—not dilutes—the Convention's preemptive effect . . . ." *Id.*

Plaintiff's proposed negligence claim is preempted by the Montreal Convention. Therefore, her proposed amendment is futile, and her Motion for Leave to File Amended Complaint will be denied.

**IT IS ORDERED:**

1. Defendants' Motion to Dismiss (Doc. 9) is **denied**.

2. Plaintiff's Motion to Remand for Lack of Subject Matter Jurisdiction (Doc. 10) is **denied**.

. . . .

3. Plaintiff's Motion for Leave to File Amended Complaint (Doc. 16) is **denied**.

4. Defendants shall file their answer within **fourteen (14) days** of the date this Order is docketed. The parties are advised that their duties under the Mandatory Initial Discovery Pilot Project are triggered by the filing of a responsive pleading to the complaint. Gen. Order 17-08(A)(6).

Dated this 20th day of November, 2018.

_____
Honorable Rosemary Márquez
United States District Judge